IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| ERNEST GREEN, ) | Case No. 16-04137-TOM-13 |
| ) | |
| Debtor. ) | |

_____

## MEMORANDUM OPINION AND ORDER

This case came before the Court on October 26, 2017, for a hearing on the Debtor's Motion to Modify (the "Motion) his confirmed plan. Appearing before the Court were Ernest Green, the Debtor; Jo Ann Green, the wife of the Debtor;[1] Thomas Humphries and Tom Tutten, attorneys for Wells Fargo Bank, N.A.; and Mary Frances Fallaw, attorney for the Chapter 13 Trustee.

This case also came before the Court on December 14, 2017, for a show cause hearing on Mr. Green's failure to make payments to the Chapter 13 Trustee.[2] Appearing before the Court at that hearing were Mr. Green, Mrs. Green, Mr. Humphries, Ms. Fallaw, and Tanita Cain.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[3] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A) and (O).[4] This Court has considered the pleadings, arguments of the Debtor

---

[1] Tanita Cain, Mr. Green's attorney, came to the hearing after it had started. Ms. Cain did not make an official appearance on the record and did not assist Mr. Green at this particular hearing.
[2] Also heard on December 14, 2017, was Tanita Cain's Motion to Withdraw as Mr. Green's attorney, Ms. Cain's objection to this Court's notice and order on the Motion to Withdraw, and Mr. Green's objection to Ms. Cain's objection. These matters will be addressed in a separate order.
[3] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.
[4] 28 U.S.C. §157(b)(2)(O) provides as follows:
> (b)(2) Core proceedings include, but are not limited to–

and arguments of counsel, the testimony of witnesses, the exhibits, and the law, and finds and concludes as follows:[5]

## FINDINGS OF FACTS[6]

Mr. Green filed this Chapter 13 bankruptcy case on October 7, 2016. Wells Fargo Bank, N.A. ("Wells Fargo") filed a proof of claim (the "Proof of Claim") on November 9, 2016 showing that Mr. Green owes a total of $58,627.69, with past due amounts of $23,538.43. According to the documents attached to the Proof of Claim, Mr. Green and his wife, Jo Ann, took out a loan in the amount of $50,500 from First Union Home Equity Bank, N.A. on February 11, 1998. Mr. and Mrs. Green signed a promissory note (the "Note") agreeing to repay the money with 10.360 percent interest by making monthly principal and interest payments for 360 months. Indorsements written on the Note show that it was eventually transferred to Wells Fargo. Also on February 11, 1998, Mr. and Mrs. Green signed a mortgage (the "Mortgage") giving First Union Home Equity Bank, N.A. a security interest in their home to secure the loan.

Both Mr. and Mrs. Green have had prior cases,[7] both before and after date of the Note and Mortgage. Since the date of the Note and Mortgage, Mr. Green filed Case No. 11-03418, a Chapter 13 case assigned to this Court. In that case Mr. Green listed on his schedules that he owed a debt to Wells Fargo Home Mortgage in the amount of $43,607.00 and past due payments in the amount

---

(A) matters concerning the administration of the estate;
…
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims[.]

[5] This Memorandum Opinion and Order constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[6] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[7] Mr. Green's prior cases are as follows: No. 86-01264, Chapter 13 (joint case with his wife, Jo Ann); No. 91-03147, Chapter 13; and No. 11-03418, Chapter 13. Ms. Green has had six prior cases including the one filed with Mr. Green.

of $8,443.00. He also showed on his schedules that Wells Fargo Home Mortgage had a mortgage on his home. In his plan, which was confirmed on September 19, 2011, he proposed to make his monthly mortgage payments directly to Wells Fargo. The plan also provided that the $8,444.00 in past due amounts would be paid through the Trustee in the amount of $200.00 per month. Unfortunately, the Trustee could not make payments to Wells Fargo during most of the case because a claim for the Wells Fargo debt was not filed until October 26, 2015.[8] Also during the case there were times that Mr. Green had apparently been unable to make payments to the Trustee,[9] and eventually the case was dismissed on August 11, 2016, for that reason. The Court's records do not show that Mr. Green ever claimed in that case that his mortgage debt was owed to anyone other than Wells Fargo or that he claimed or asserted any fraud by the mortgage company.

    Mr. Green's current case was filed on October 7, 2016. He again listed on his schedules that he owed a mortgage debt to Wells Fargo Home Mortgage. The total amount of debt was listed as $38,862.94. Mr. Green's Chapter 13 plan provided that he would make monthly mortgage payments directly to Wells Fargo Home Mortgage, and that $3,300[10] in past due amounts would be paid through the Trustee in the amount of $110 per month. The previously mentioned Proof of Claim filed November 9, 2017 by Wells Fargo Bank, N.A. shows a higher total debt amount and a higher past due amount than Mr. Green listed on his schedules. According to the Proof of Claim, the total debt is $58,627.69 with past due amounts of $23,538.43. The copy of the February 1998 Note to First Union Home Equity Bank N.A. that was attached to the Proof of Claim has three

---

[8] Wells Fargo did not file a proof of claim for the past due amounts owed. Mr. Green's attorney filed a proof of claim for Wells Fargo on October 26, 2015.

[9] A Motion to Dismiss for Failure to Make Plan Payments was filed on May 11, 2015, which was denied by order dated June 15, 2015. Another Motion to Dismiss for Failure to Make Plan Payments was filed on June 23, 2016. This one was granted by order of August 11, 2016.

[10] The approximate amount of arrearage indicated on the proof of claim filed by the attorney in Mr. Green's 2011 case is $3,300. It is unclear why the attorney indicated the arrearage to be cured in the 2011 plan was listed at $8,444 but the proof of claim filed by the same attorney indicated arrears in the amount of $3,300. Mr. Green's current case was filed by a different attorney.

3

"indorsements" written on the bottom transferring the rights in the Note to others. One of the indorsements says "without recourse pay to the order of Wells Fargo Bank, N.A., successor by merger with Wachovia Bank of Delaware, N.A." A copy of the February 1998 Mortgage from Mr. and Mrs. Green to First Union Home Equity Bank, N.A. was also attached to the Proof of Claim. Attached to the Mortgage is a Corporate Assignment of Mortgage assigning ownership of the Mortgage to Wells Fargo Bank, National Association. The Corporate Assignment of Mortgage was recorded in Jefferson County, Alabama, the county in which Mr. Green's home is located.

Mr. Green filed an Objection to Claim on November 30, 2016, asking that the "claim be disallowed as filed and reduced to amounts to be determined by the court." Doc. 30, Objection to Claim. Tanita Cain, Mr. Green's attorney at the time, filed a Motion to Withdraw on August 22, 2017, the day before the hearing on the Objection to Claim and on confirmation of Mr. Green's plan.[11] At the August 23, 2017 hearing, attorney Sherice Carter from Ms. Cain's law firm was present at the beginning of the hearing. *See* Transcript of August 23, 2017 Hearing (the "Transcript"), at 3. She explained that Ms. Cain would be late due to a family emergency. *Id*. Ms. Cain came to the hearing after it had started. *See* Transcript at 11. At the hearing Mr. Green had copies of checks and bank records showing payments that he had made to Wells Fargo. Wells Fargo had a list of the payments that it claimed Mr. Green had missed and that Mr. Green had not shown proof that he had paid. The Court asked the parties if they would like to start the trial or have a chance to discuss settling the dispute. Mr. and Mrs. Green, Ms. Cain, Mr. Humphries, and a representative of Wells Fargo talked outside of the Court's presence and then informed the Court of an agreement. Wells Fargo's attorney announced that everyone agreed Mr. Green had been given credit for all of the payments that he had been able to prove with cancelled checks, bank

---

[11] This Court did not rule on Ms. Cain's Motion to Withdraw prior to the August 23, 2017 hearing; therefore, Ms. Cain was still Mr. Green's attorney at the hearing.

4

statements, or other documents, then the attorney read the agreement into the record. The attorney stated that instead of paying the $23,538.43 in past due amounts that Wells Fargo showed on its Proof of Claim that Mr. Green owed, Mr. Green instead would pay $14,167.99. However, the reduced amount would apply only if Mr. Green paid this Chapter 13 case in full and got a discharge. Otherwise, Mr. Green would owe the entire amount of past due payments that Wells Fargo showed on the Proof of Claim. Wells Fargo's attorney explained that Wells Fargo would not object if Mr. Green took up to 60 months to pay his case. He further explained that, effective immediately, if Mr. Green did not show proof that he paid his homeowners' insurance[12] then Wells Fargo would send him written notice that the insurance had not been paid, and give him 15 days to pay it before Wells Fargo bought its own insurance. He also explained that Wells Fargo would review his loan to see if it could be modified. Mr. Green (and Mrs. Green) sat in the Courtroom the entire time that Wells Fargo's attorney explained the agreement. Mr. Green never mentioned that he did not like the terms of the agreement, that he wanted to show any evidence to the Court, or that he wanted Wells Fargo to show any evidence to the Court. The Court asked Mr. and Mrs. Green about the agreement:

> Court: Mr. and Mrs. Green, you've heard these terms read out loud and I've asked a lot of questions. Do y'all understand these terms that – as they've been read in open court today?
> Mr. Green: Yes, ma'am.
> Mrs. Green: Yes, we do.
> Court: Okay. And you all have agreed to this?
> Mr. Green: Yes, ma'am.
> Mrs. Green: Yes, ma'am.

---

[12] Many mortgages require that the homeowner pay not only principal and interest payments each month, but also additional amounts so that the mortgage company will have the money collected to pay for homeowners insurance and property taxes when they come due. Mr. Green's mortgage requires him to pay their insurance payments directly to the insurance company and the property taxes directly to the county. This has created a lot of dispute between Wells Fargo and Mr. Green because Wells Fargo claims Mr. Green and his wife have not paid the insurance and taxes. Mr. Green advised the Court at the hearing that he and Mrs. Green were now exempt from paying property taxes in future years.

5

Transcript at 23. Based on the agreement resolving the dispute between Mr. Green and Wells Fargo, this Court's order confirming Mr. Green's Chapter 13 plan (the "Confirmation Order") and providing that Mr. Green would pay to the Trustee "$282 monthly for 60 months beginning immediately" was entered on September 12, 2017. Doc. 68. On September 29, 2017, an Order Sustaining Objection to Claim with Conditions setting out the terms of the settlement was entered. Doc. 82.[13]

On September 21, 2017, Mr. Green filed his pro se Motion to Modify (Doc. 75) that is now before the Court. Mr. Green asked in his Motion that his payments be changed and that his attorney not get paid. Soon after that, Mr. Green filed a supplement (the "Supplement") to the Motion. Doc. 84. In the Supplement, Mr. Green claimed that he did not get an evidentiary hearing or a fair trial on August 23, 2017. In effect, Mr. Green stated in his Supplement that he had not been shown proof that Wells Fargo has a contract or ownership of his property, but instead had been shown a "claim of false paper which was raise to me as fraud." Mr. Green claimed that Wells Fargo had made up its own contract and gave it to the Court, and that Wells Fargo presented evidence "that was rejected as proof of claim" by the Court. Mr. Green requested that the Court sustain his Objection to Claim, and further, that at the hearing on his Motion Wells Fargo should show a contract. Finally, Mr. Green claimed that "assignment of certificates of ownership of a company do not show proof of a contract with Ernest & Jo Ann Green & Wells Fargo."

At the hearing Mr. Green attempted to further explain his arguments. He said that Wells Fargo's attorneys committed fraud because he and his wife never signed a contract with Wells Fargo so the contract Wells Fargo has is a forgery. Mr. Green said he had paperwork with him

---

[13] Wells Fargo filed a Motion for Relief from Stay on September 20, 2017, after the August 23 hearing but before the Order Sustaining Objection to Claim with Conditions was entered. The Motion for Relief from Stay was withdrawn on October 17, 2017.

6

that would prove his case, but he would not let the Court see or copy the paperwork. When an attorney for Wells Fargo showed Mr. Green a copy of the 1998 Mortgage to First Union Home Equity Bank, Mr. Green stated that he did not sign that document. He then explained that his signature was on the Mortgage but that it was from a document "prepared for Wells Fargo in 2010." He further testified that the copy of the 1998 Note shown to him by the attorney for Wells Fargo was a fake document.

Mr. Green called Mrs. Green to testify at the October 27, 2017 hearing. The Court asked Mrs. Green if there was anything that she would like to tell the Court about the Note and Mortgage. Mrs. Green replied "[M]y husband was getting cut so much money out of his check at one point. Then they turned it over into my account when he wasn't working. Then they start paying out of my account and then in 2012 I went bankrupt, but when I went bankrupt, that made all those payments null and void."

At the hearing on the Motion, Mr. Green did not mention that he wanted his payments to be modified even though he asked for that in the Motion. The attorney for the Chapter 13 Trustee explained at the hearing that Mr. Green's request in his Motion to pay $325 per month for 36 months was not enough to pay the claims in his case. The Court asked Mr. Green if he was still asking to pay that amount, and he responded "I'm proposing that Wells Fargo show a legal document that saying contract – that a contract stating that they own my property."

By reviewing the Trustee's records, the Court realized that Mr. Green had not been making payments to the Trustee like he was supposed to according to the order confirming his Chapter 13 plan. This Court's Notice and Order entered on November 21, 2017, advised Mr. Green that the Court would hold a hearing for him to explain why the Court should let Mr. Green keep his Chapter 13 case since he was not making the required payments. The Order also told Mr. Green that since

7

his bankruptcy case was mostly for the purpose of catching up his mortgage, and that since his disagreement with the mortgage company was a state law issue that the state court could rule on, Mr. Green should also be prepared to explain why the Court should not dismiss his case and prevent him from filing another bankruptcy case for a reasonable period of time if this case got dismissed. The "show cause" hearing took place on December 14, 2017.

At the show cause hearing, Mr. Green explained he thought that this Court had rejected Wells Fargo's evidence, and that since this Court had not made a ruling that he owed any money to Wells Fargo, he did not have to make payments since Wells Fargo was his only creditor.[14] He also stated that the Trustee was holding a little over $2,000 that he had paid in his last case. However, Ms. Fallaw, attorney for the Trustee, explained that the money paid in his case had already been distributed and that the Trustee is not holding any money. Ms. Fallaw also confirmed that Mr. Green had not made a payment to the Trustee since August 2017.

Mr. Green also gave the Court a couple of reasons that he does not have an agreement with Wells Fargo. First, Mr. Green said that he did not have an attorney at the time of the hearing where the agreement was announced. He explained that Ms. Cain had told him the day before the hearing that she was quitting as her attorney. Second, Mr. Green stated that he got an agreement that told him how much he had to pay Wells Fargo in another case, but he did not get the same agreement in this case. Mr. Green showed the Court the document that he referred to, which was a Notice of Payment Change that Wells Fargo filed in Mrs. Green's 2010 bankruptcy case, Case No. 10-05021. In addition, Mr. Green argued that Wells Fargo had withdrawn their Motion for Relief from Stay.

---

[14] Although Mr. Green listed Wells Fargo as his only creditor on his schedules, the Alabama Department of Revenue filed a proof of claim in the amount of $432.13.

As in the previous hearing, Mr. Green argued that Wells Fargo had committed fraud and did not show proof that he owes them any money.[15]

### CONCLUSIONS OF LAW

Mr. Green's Motion and supplement indicate that he wants to change his payments and argue that the Note and Mortgage are not valid. After hearing his arguments in Court, it appears that Mr. Green is really requesting to set aside the Order on the Objection to Claim and his agreement with the mortgage company and instead have this Court find he was defrauded. Therefore, the Court will treat the Motion as a motion to set aside the Order and agreement.

Mr. Green claims that he did not get an evidentiary hearing or fair trial in August 2017. Mr. Green and Ms. Carter advised the Court that they brought to that hearing copies of checks and bank records showing payments that he had made on his mortgage. The Court gave the parties an opportunity to start the trial and present evidence. However, Mr. Green, his attorneys Ms. Cain and Ms. Carter, Wells Fargo's attorney and the Wells Fargo representative decided to review the documents and negotiate. When the parties came back into the Courtroom and the attorney for Wells Fargo told the Court what the settlement was, Mr. Green could have told the Court that he did not want to settle, that he believed Wells Fargo forged or faked documents, that Wells Fargo did not have a contract, or anything else. Instead, Mr. and Mrs. Green told the Court that they understood the terms of the settlement and agreed with those terms. *See* Transcript at 23. The Court cannot conclude that Mr. Green did not have a fair trial or the chance for an evidentiary hearing.

---

[15] On December 18, 2017, days after the hearing, Mr. Green filed another supplement again arguing that Wells Fargo has committed fraud and has not shown proof that he owes them. For the first time Mr. Green has alleged that the loan was paid by insurance proceeds. As will be explained later in this Memorandum Order and Opinion, this is a state law issue that may be raised in a state court.

Wells Fargo has properly filed its Proof of Claim in this case and has attached copies of the Note and Mortgage that Mr. and Mrs. Green signed on February 11, 1998. The Proof of Claim and the attached documents show that Wells Fargo owns or has rights to the Note and Mortgage. Bankruptcy Rule 3001(f) says, in effect, that a proof of claim that has been filed following the Bankruptcy Rules is to be considered correct unless someone proves that it is not. Fed. R. Bankr. P. 3001(f).[16]

Mr. Green testified that he did not sign the Note and Mortgage that the attorney for Wells Fargo showed him at the hearing, which were the same ones filed with the Proof of Claim. However, the signatures that are supposed to be Mr. Green's signatures on the Note and the Mortgage look the same as Mr. Green's signature on his Motion filed on September 21, 2017. Mr. Green has not shown to the Court any documents that are supposed to be the real Note and Mortgage that he signed in 1998. Mr. Green testified that the signatures on the Mortgage were taken from a document prepared in 2010 but again Mr. Green did not show the Court the 2010 document that he mentioned.[17]

The Court understands that the copy of the Note that Mr. Green originally got when he and Mrs. Green signed it in 1998 does not look identical to the copy of the Note that Wells Fargo attached to its Proof of Claim. There are "indorsements" or "assignments" written on Wells Fargo's copy of the Note. Those "assignments" transfer First Union Home Equity Bank's rights eventually to Wells Fargo. These do not make the Note invalid or void. This is a normal way to

---

[16] Bankruptcy Rule 3001(f) says:
(f) Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.
Fed. R. Bankr. P. 3001(f).
[17] The Court notes that in some documents that Mr. Green has filed with the Court, parts of different documents have been mixed together. For example, part of one document has been copied onto the same page that a part of another document is on. *See* Doc. 108, Miscellaneous Correspondence.
.

10

Case 16-04137-TOM13    Doc 112    Filed 12/18/17    Entered 12/18/17 14:28:13    Desc
Main Document    Page 10 of 14

transfer rights to a Note from one bank to another. Mr. Green argued that "assignment of certificates of ownership of a company do not show proof of a contract" between the Greens and Wells Fargo. While it is true that Mr. and Mrs. Green did not originally make any kind of contract with Wells Fargo, the assignments of the Note and Mortgage to Wells Fargo have the same effect as if they had. Therefore, Wells Fargo can now collect on the Note or foreclose on the Mortgage. Although Mr. Green may believe it, without clear evidence that the Note, Mortgage, and other documents attached to the proof of claim are false, this Court cannot find that Wells Fargo or its attorneys have committed fraud or acted wrongfully. According to the Bankruptcy Rules, the Proof of Claim is considered to be correct and is due to be paid.

Although Mr. Green has had prior bankruptcy cases, this is the first time that he has claimed any problems with or voiced any dispute as to the Note or Mortgage. In his prior case, 11-03418, filed after the 1998 Note and Mortgage, Mr. Green did not file anything or say anything about the Note or Mortgage being fraudulent or forged. He showed on his schedules in that case that Wells Fargo was a creditor with a mortgage on his property. He proposed in his plan in that case to pay his mortgage payments straight to Wells Fargo and pay past due payments to Wells Fargo through the Chapter 13 Trustee. In Mr. Green's current case he again included Wells Fargo in his schedules as a creditor with a mortgage on his home. He proposed in his plan in this case that he would pay his regular, monthly mortgage payments to Wells Fargo and pay past due amounts owed to Wells Fargo through the Chapter 13 Trustee. On November 30, 2016, Mr. Green filed an objection to Wells Fargo's Claim but he objected only to the amount of the claim, nothing else. After several years of proposing to pay Wells Fargo, it is not reasonable for Mr. Green to now say that Wells

Fargo is not due to be paid. *See Smith v. Werner Enters., Inc.*, 65 F. Supp. 3d 1305, 1309 (11th Cir. 2006).[18]

No evidence has been presented to the Court that the money that Mr. and Mrs. Green borrowed in 1998 has been paid off. Therefore, the money is still owed to someone. If Mr. and Mrs. Green want to keep the property the debt must be paid, or the Mortgage may be foreclosed. No entity other than Wells Fargo has claimed the right to be repaid. Mr. Green noted in Court that Wells Fargo had withdrawn their Motion for Relief from Stay. However, the withdrawal does not mean that Wells Fargo has agreed that it does not have Mr. and Mrs. Green's Note and Mortgage. Although Wells Fargo did not explain why it withdrew the Motion for Relief from Stay, the Court presumes it was withdrawn because it reached an agreement with Mr. Green for him to make his mortgage payments and catch up on past due amounts.[19]

Mr. Green and Wells Fargo worked out a deal that would have allowed Mr. Green to pay a substantially reduced amount to Wells Fargo, and when he finished his case, he would be caught up on his mortgage payments. Mr. Green has argued that he did not have an attorney when the agreement was made, but Ms. Cain had not been allowed to withdraw from this case at that time and in fact was involved in the negotiations between the Greens and Wells Fargo. Mr. Green has also argued that he did not receive in this case an "agreement," namely, a Notice of Payment Change, like his wife received in her 2010 bankruptcy case. However, the purpose of a Notice of Payment Change is just what its title suggests – it is a notice to a debtor that the mortgage payments are changing for some reason. Wells Fargo would not have to file such a notice in this case if the mortgage payments have not been changed. It appears to this Court that Mr. Green now is trying

---

[18] "'[J]udicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings.'" *Smith*, 65 F. Supp. 3d at 1309 (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002)).

[19] It is common and routine for motions for relief from stay to be filed and subsequently withdrawn.

12

to assert that either no agreement was reached or that he may not now like the deal he agreed to in open Court and on the record, but there is precedent for[20] this Court's long-standing policy that once parties reach an agreement and an order on the agreement is entered, the parties must follow the agreement. *See, e.g., In re Nalls*, No. 06-01291-TOM-13, 2007 WL 988039, at *4 (Bankr. N.D. Ala. May 7, 2007).[21] Public policy also requires this Court to enforce agreements; once terms are agreed upon, the terms should be enforced.

Mr. Green has not been making regular payments to the Trustee. Bankruptcy Code § 109(e) says "[o]nly an individual with regular income . . . may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e). Bankruptcy Code § 1326(a)(1) says that a debtor must start making payments not later than 30 days from the date a Chapter 13 case is filed.[22] One purpose of Chapter 13 is for debtors to pay as much as they can to creditors.[23] *In re Pierre*, 468 B.R. 419, 425 (Bankr. M.D. Fla. 2012). As one court has explained,

> In essence, a chapter 13 plan is a contract between a debtor and its creditors. This contract permits a debtor to extend and adjust its debts. If a debtor fails to fulfill its promise under the plan and make all of the proposed payments, then it is not afforded the benefit a chapter 13 discharge.

*In re Archie*, 240 B.R. 425, 427-28 (Bankr. S.D. Ala. 1999) (Mahoney, J.). Therefore, if a debtor in Chapter 13 cannot or will not regularly make the required payments, the debtor cannot stay in the Chapter 13 case.

---

[20] *United States v. Swift & Co.*, 286 U.S. 106, 119-20, 52 S. Ct. 460, 464, 76 L. Ed. 999 (1932).

[21] "This Court has consistently denied actions to alter, amend or set aside consent orders because the Court is reluctant to unravel what was entered into consensually by the parties who were represented by counsel. The setting aside of consent orders has long been frowned upon by all courts." *Nalls*, 2007 WL 988039, at *4 (citing *United States v. Swift & Co.*, 28 U.S. 106, 52 S. Ct. 460, 76 L.Ed. 999 (1932)).

[22] Bankruptcy Code § 1326(a)(1) provides:
> Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier[.]

11 U.S.C. § 1326(a)(1).

[23] [T]he legislative purpose of Chapter 13 is to maximize recovery to creditors by allowing debtors to cure arrears and make payments over a period of up to 60 months." *Pierre*, 468 B.R. at 425.

13

Case 16-04137-TOM13    Doc 112    Filed 12/18/17    Entered 12/18/17 14:28:13    Desc
Main Document    Page 13 of 14

The Confirmation Order entered September 12, 2017, required Mr. Green to pay $282.00 monthly for 60 months beginning immediately.  Despite that, Mr. Green has not made a payment.  Mr. Green, like many Chapter 13 debtors, tried to excuse his nonpayment by arguing the Court had not ruled and he might not owe Wells Fargo any money.  However, none of that excuses non-payment.  Therefore, since he has not been able or has been unwilling to pay in this case, he is not entitled to remain in this case.  However, Mr. Green has other options for dealing with the mortgage company.  Mr. Green has made new arguments that Wells Fargo has committed fraud.  Notes and mortgages are governed by state law, so if Mr. Green would like to argue that the Mortgage and Note are not valid, the state court may the best court to rule on that question in this circumstance.

Also, as already discussed, Mr. Green had a prior case dismissed for non-payment to the Trustee and he has not been making payments in this case.  In both cases, a confirmation order had been entered directing him to make payments to the Trustee.  Pursuant to Bankruptcy Code § 109(g), if a case is dismissed for failure to abide by a court's orders, the debtor may be prohibited from filing another bankruptcy case for 180 days.  11 U.S.C. § 109(g).

Therefore, it is **ORDERED, ADJUDGED, and DECREED** that Mr. Green's Motion is **DENIED**.  It is further

**ORDERED, ADJUDGED, and DECREED** that this bankruptcy case is due to be and is hereby **DISMISSED**, and Mr. Green is prohibited from filing another bankruptcy case for a period of 180 days.

Dated:  December 18, 2017  /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm

14

Case 16-04137-TOM13    Doc 112    Filed 12/18/17    Entered 12/18/17 14:28:13    Desc
Main Document      Page 14 of 14